**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br>v.<br>**JOSE CORTES** | CR No. 18-CR-0069-WES-LDA |

### GOVERNMENT'S SENTENCING MEMORANDUM

The United States requests that this Court sentence the Defendant Jose Cortes to a guideline term of 70 years, or 840 months, imprisonment. The Defendant repeatedly abused a defenseless toddler in his care and memorialized this abuse by filming and photographing his acts. These horrific actions warrant a significant punishment. The Defendant's hands on abuse of this victim, coupled with his sizeable collection of child pornography, show that the Defendant is a dangerous man with a sexual interest in young children, who should be incarcerated for an effective life sentence to punish him for his conduct, to protect the public, and to deter him and other who may consider engaging in such conduct.

**I.    OFFENSE CONDUCT SUMMARY**

The defendant has pled to two counts of Production of Child Pornography and one count of Possession of Child Pornography. Dkt. 52, Plea Agreement; PSR, ¶ 6. His crimes, in a word, are heinous.

Having a regular access to a female toddler, the Defendant used his relationship with her to sexually abuse her multiple times and take pictures and video of this abuse.

1

In one set of images, as the victim lay on the floor in her children's Frozen pajamas, the Defendant took close up photographs of her vaginal area. In another set of images, the victim, was wearing children's 101 Dalmatians pajamas, and the Defendant again took close up photographs of her vaginal area. However, in these images, the Defendant photographed himself touching the child's genitalia. In the third set of images, as the victim lay sleeping, the Defendant posed and photographed his penis near the defenseless toddler's face. PSR, ¶ 14. The child's mother has reported that the child was approximately 2.5 to 3.5 years old at the time of the images. PSR, ¶ 19. Approximately 225 images of this toddler-aged victim, some of which appear to have been screen shots from a video, were recovered from one of the Defendant's devices (the Nextbook tablet). PSR, ¶ 13. As the evidence shows, the Defendant's abuse of this young child was not an isolated incident. He sexually abused her on at least three separate occasions and memorialized that abuse.

In addition to abusing this toddler, and creating his own child pornography, the Defendant amassed a sizeable collection of child pornography, which was stored on multiple devices and storage media. PSR, ¶ 15-17. On the same device that contained the abuse images of the known victim, the Defendant has stored a bondage type child pornography video of a prepubescent female being raped. PSR, ¶ 15 (more detailed description of the video in the PSR). Two additional devices contained yet more child pornography images and video (1,400 images on a Toshiba SD card and 3,000 images and 6 videos on a ZTW Tablet), as well as internet history with websites consistent with

2

child pornography websites. PSR, ¶ 17.

The Defendant's conduct came to light after he showed his collection of child pornography, including pictures of known victim he abused to create child pornography, to a friend. His friend testified that the Defendant showed him images on a tablet of teenaged girls and then images of babies being molested. The friend provided graphic description of the image types that the Defendant viewed on his tablet. *See* PSR, ¶ 22 (more detailed description of the video in the PSR). His friend also described that, as the Defendant flipped through images on the tablet, the Defendant came upon images of the known victim and said "That's me with my XXXX's daughter." The Defendant's friend testified about the specific images, one of which is similar to an image that the Defendant has admitted, in his plea, to producing. PSR, ¶ 22; Plea Agreement, ¶ 4a. The friend also testified that the Defendant explained how he gained access to the victim and told him PSR, ¶ 23. The Defendant told his friend that he would put the victim's sibling in the other room with video games and treats, so he could "do what he does to her." The Defendant explained to his friend "if you're gonna do this, you gotta get the children that don't talk, they're babies. … You gotta babies, you can't get them grown, you can't get them 7, 8 years old because they talk. They'll say something and get you in trouble." PSR, ¶ 23 (citing from Grand Jury testimony).

II.  **OBJECTIONS TO THE PRESENTENCE REPORT**

The defense has made four objections, each relating to the inclusion of information

3

in the PSR. The objected-to information is properly included in the PSR and should be considered by the Court at Sentencing. First, in the Plea Agreement, the Defendant agreed that "[t]he government reserves its full right of allocution, including the right to present any information to the Court for its consideration in fashioning an appropriate sentence." Plea Agreement, ¶ 9. The information at issue is properly considered both as relevant conduct under U.S.S.G. 1B1.3 and under 18 U.S.C. § 3553(a).

As to the objections to the PSR ¶ ¶ 15 and 22/23, the information described therein relate directly to the offense conduct. Paragraph 15 is a description of an image. The image described in paragraph 15 is a part of the offense conduct. Upon the Defendant's concern that there was a misunderstanding that the image described him, the United States agreed to the addition of language for clarification. In ¶ ¶ 22 and 23, the information relates to the Defendant's showing his friend his collection of child pornography, that the Defendant has pled guilty to possessing. The information in paragraphs 22 and 23, regarding the Defendant's friend's description of the images that the Defendant showed him on a tablet (a device on which the Defendant has admitted possessing images), also directly relate to the offense conduct. The Defendant's statements to his friend about the images he created with the known victim, and how he created those images, relate directly to the conduct that he has admitted and plead to in Counts One and Two (Sexual Exploitation of a Minor).

As to the objection to PSR, ¶ 10, the information from the treating physician and regarding the child's forensic examination bears on the actions of the Defendant, and

effect on the victim, from the Defendant's pled-to Sexual Exploitation of a Minor (Counts 1 and 2) for which he now stands before the Court for Setencing.

Finally, the defendant's prior criminal history and the circumstances of his prior arrests (¶ 24), falls squarely within the "history and characteristics of the defendant" type of information that the Court is to consider at sentencing under 18 U.S.C. § 3553(a).

### III.   DISCUSSION

A. <u>A 70 Year, or 840 Month, Sentence is a Reasonable Sentence under the Sentencing Factors Under 18 U.S.C. § 3553.</u>

1. *Nature and Circumstances of the Offense.*

Although this Court must consider other factors beyond the Defendant's offense conduct, this Court should nonetheless give significant weight to his offense conduct in crafting his sentence. The Defendant used a toddler aged child as a sex object. At times when he could have undisturbed access to this child, he posed her to take sexualized photographs and videos; he manipulated her to allow him to touch her vaginal area and photograph this act; and while she innocently slept, he placed his penis near her head for more photographs. He did not suffer from a solitary lapse in judgment. His conduct was calculated and premeditated and took place on multiple dates. He preyed on the trust that this toddler placed in him, to sexually molest her, for his perverse sexual gratification. Anyone with a conscience, but particularly a father, as the Defendant is, would know the damaging and lasting effect that such a violation would have a young child.

2. *History and Characteristics of the Defendant.*

The PSR describes a troubled background for this Defendant. Although his background undoubtedly left him with burdens to carry into adulthood, nothing in his background could explain or excuse the conduct for which he stands before this court.

This Court should not place any significant weight on the Defendant's ambiguous, uncorroborated, and brief reference to recalling some memories of having been sexually abused as a child. *See* PSR ¶ 84. Based on the facts of this case and the section 3553(a) factors, that allegation simply does not form a legitimate basis for a more lenient sentence. The notion that any sexual abuse he experienced at age 13 is causally related to his child pornography collection and his repeated abuse of toddler / pre-school aged child victim is so utterly speculative that this Court should disregard it. *See United States v. Fuentes-Moreno*, 954 F.3d 383, 395 (1st Cir. 2020) (noting that a sentencing court may consider any information provided it has sufficient indicia of reliability) (collecting cases); U.S.S.G. §6A1.3(a) ("[Courts] may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."). Further, even if the Court were to accept the Defendant's recent disclosure as true, there are serious limitations to the male sexual abuse victim-offender cycle that has been popularized as an explanation of why some males sexually offend. [1] In short,

---

[1] *See, e.g.*, Lambie, Ian et al., "Resiliency in the victim-offender cycle in male sexual abuse" in *Sex Abuse: A Journal of Research and Treatment* 14(1) (2002) at 43. "[S]exual abuse at particular ages and frequency of abuse do not of themselves necessarily lead to an increased likelihood of

6

Defendant's recent abuse allegations, even if true, neither excuse his behavior nor mitigate against a Guidelines sentence.

3. *Reflect the Serious of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.*

The Defendant's toddler-aged victim is too young to express the harm—both physical and psychological—that Defendant's conduct undoubtedly brought on her and that she will carry her entire life. As shown by her reaction to the medical and forensic

---

perpetuating abuse across generations." Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in *Child Abuse & Neglect* 20(3) (1996) at 230; Glasser, M. et al., "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator" in *The British Journal of Psychiatry* 179 (2001) at 488 (noting that "the data do not provide strong support for a cycle of sexual substantial proportion of male perpetrators"). Although some studies suggest that prior victimization may have some effect in a minority of cases, "[a]nother possibility is that some sexual perpetrators may feign sexual victimization in order to gain sympathy, preferential treatment, or therapy." Glasser, M. et al., "Cycle of child sexual abuse: links between being a victim and becoming a perpetrator" in *The British Journal of Psychiatry* 179 (2001) at 488; *see also*, Hall, R.C.W., "A Profile of Pedophilia: Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues" in Mayo Clinic Proceedings 82(4) (2007) at 464 ("There is also legitimate concern regarding the validity of many of the self-reports of pedophiles who claim to have been abused as children themselves. These statements are often made in a legal or group treatment setting, in which pedophiles may be trying to mitigate their sentence or gain sympathy for their behavior."); Haywood, Thomas et al., "Cycle of Abuse and Psychopathology in Cleric and Noncleric Molesters of Children and Adolescents" in *Child Abuse & Neglect* 20(12) (1996) at 1234 ("Studies into prevalence of childhood sexual abuse among sex offenders have produced mixed results with 8% to 60% of child molesters reporting having been sexually abused as a child. Variability in prevalence rates across studies may be due in part to differing motivations on the part of subjects to give self-serving histories. . .") (citations omitted); Briggs, F. and R. Hawkins, "A Comparison of the Childhood Experiences of Convicted Male Child Molesters and Men who were Sexually Abused in Childhood and Claimed to be Nonoffenders" in *Child Abuse & Neglect* 20(3) (1996) at 232 ("Perpetrators may lie about their actions or attempt to excuse their behavior by pointing to their own victimization as children. . . Excuse-making may be more prevalent in settings where such behavior may be useful, such as in the early stages of therapy (before learning that excuse-making is not acceptable) or during the trial process (perhaps under the guidance of enthusiastic defense lawyers)."). When held to a polygraph examination, the share of offenders who experienced sexual victimization in their own lives drops significantly. Hindman, Jan et al., "Shedding Light on the Histories of Sex Offenders Using Clinical Polygraphy" in *The Sexual Predator* (vol. IV) (2010) at 20-5; *see also* Hindman, Jan et al., "Polygraph Testing Leads to Better Understanding Adult and Juvenile Sex Offenders" in Federal Probation 65(3) (2001) at 8.

7

examination, she was unable to verbally express anything at all, yet the facts are clear that the abuse did happen at the hands of the Defendant. It is too early to tell how deeply the trauma is sewn. No one knows for sure when, where, or how the damage from Defendant's abuse will manifest itself as the victim grows older. But one thing is certain—before the victim had even experienced approximately three full years of life, the Defendant destroyed any possibility of her life ever being normal.

The Defendant's abuse of the victim also, in turn, also victimized her mother. The victim's mother will have to live with more than just the horrifying memory and knowledge that her daughter had been sexually abused by the Defendant, a person she trusted and trusted with her young child. Her mother will also be burdened for many years with the decision of whether to tell the victim, how to tell the victim, and how that knowledge may affect the victim's life.

In addition to the Defendant's hands-on abuse, his sizeable child pornography collection revictimized thousands of other children. Separate from his hands-on abuse, the Defendant consumed massive amounts of media depicting child sex abuse with no regard to the broken lives depicted in the images and videos that he so willingly shared and helped create. As the Supreme Court has recognized, "[t]he distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children .... [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation..." *Ferber*, 458 U.S. at 758–59 n. 9–10 (citations omitted).

A sentence that imprisons the Defendant for life is necessary to recognize the known victim, as well as unknown victims, harmed by the Defendant's conduct and to restore public confidence in our laws protecting children.

This Court's sentence must also consider the need to "promote respect for the law." 18 U.S.C. § 3353(a)(2)(A). When Congress passed the Protection of Children against Sexual Exploitation Act of 1977, it sought to address the organized, nationwide child pornography industry that was generating millions of dollars through the exploitation of children. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. 40, 42-43. The Act, which included 18 U.S.C. § 2251, was aimed at filling a void in federal law by targeting the production of materials depicting child abuse. S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 56. But the Act, and its later amendments, are more than prophylactic measures. They reflect value judgments and accepted moral norms of our society. As one Senate Judiciary Committee report concluded: "the use of children…as the subjects of pornographic materials is very harmful to both the children and the society as a whole," describing the conduct as "outrageous." S. REP. 95-438, 5, 1978 U.S.C.C.A.N. at 43. Indeed, child sexual abuse "is grossly intrusive in the lives of children and is harmful to their normal psychological, emotional and sexual development in ways which no just or humane society can tolerate." *See Kennedy v. Louisiana*, 554 U.S. 407, 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting) (quoting C. Bagley & K. King, Child Sexual Abuse: The Search for Healing 2 (1990)). The Defendant's actions violated federal law, but they also transgressed every conceivable normative principle

undergirding our laws. His conduct is repugnant to any conception of the good embraced by our community. This Court's sentence must express an appropriate level of social condemnation of his crimes.

It is axiomatic that hands-on sexual abuse inflicts upon its victim enormous, devastating, and long-lasting harm. That the abuse is inflicted on a child adds a devastating dimension to the harm ordinarily inflicted on rape victims. As the Supreme Court explained while addressing an Eight Amendment challenge to capital punishment for the rape of a child by her stepfather in *Kennedy v. Louisiana*:

> […] the victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood…. Rape has a permanent psychological, emotional, and sometimes physical impact on the child. We cannot dismiss the years of long anguish that must be endured by the victim of child rape.

554 U.S. at 435 (citing various studies). Those years of anguish can include sudden school failure, unprovoked crying, dissociation, depression, insomnia, sleep disturbances, nightmares, feelings of guilt and inferiority, and self-destructive behavior, including an increased incidence of suicide. *Id.* at 468 ((Alito J., joined by Roberts, C.J., Scalia, and Thomas, JJ., dissenting). Sexually exploited children also struggle to develop healthy affectionate relationships, they suffer from sexual dysfunctions, and they have a tendency to become sexual abusers themselves. *See New York v. Ferber*, 458 U.S. 747, 758 n. 9 (1982) (citation omitted). And this is to say nothing of the serious and sometimes long-lasting physical injuries that a rape can inflict on a child victim, such as internal

10

lacerations, scarring, ovary damage, and encopresis. *See United States v. Irey*, 612 F.3d 1160, 1207 (11th Cir. 2010) (collecting cases).

    4. *Afford Adequate Deterrence and Protect the Public.*

A significant sentence is also warranted to deter this Defendant and others from similar conduct in the future. Deterrence is important for crimes involving the sexual abuse of children, including child pornography. *See United States v. Goldberg*, 491 F.3d 668 (7th Cir. 2007). "Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor." *See id*. The Supreme Court has noted "grave concerns over the high rate of recidivism among convicted sex offenders and their dangerousness as a class..." *Smith v. Doe*, 538 U.S. 84, 103 (2003). The Defendant fits well within that class. As several Circuits have recognized, research in this field is "consistent with what judicial decisions show: pedophiles who have sexually abused children are a threat to continue doing so, and age does not remove the threat." *Irey*, 612 F.3d at 1214 (citing various studies and reports); *see also United States v. Pugh*, 515 F.3d 1179, 1201 (11th Cir. 2008) ("sex offenders have appalling rates of recidivism and their crimes are under-reported."); *United States v. Allison*, 447 F.3d 402, 405–06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). Defendant's repeated sexual exploitation of the victim evidences a high probability of recidivism if this Court allows him the chance to reenter society. A strong need thus exists to protect children in the community from the Defendant — now and well into the

future.

    *5. Avoiding Unwarranted Sentencing Disparities.*

A sentence that essentially amounts to a lifetime sentence for the Defendant is a just and is warranted in this case. A sentence of 70 years would avoid unwarranted sentence disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(6). In other cases involving sexual contact with a minor in this District, courts have pronounced very lengthy sentences. *See United States v. Gaccione*, 977 F.3d 75 (1st Cir. 2020) (DRI Docket 17-00004-JJM-LDA) (affirming a 2,160 month sentence for production of child pornography, and distribution and possession, for a father who abused his teen daughter and produced child pornography over a period of years); *United States v. Goodman*, Cr No. 18-141 JJM (defendant sentenced to 260 years after production of materials of him abusing his two daughters from ages 3.5 weeks to 1.5 years old, and 6-12 years old, respectively, and child of a friend from ages 6-9 years old); *United States v. Crisostomi*, Cr. No. 12-166-JJM (defendant sentenced to 35 years imprisonment after creating videos of him receiving oral sex from his 7 year old daughter); *United States v. Keener*, Cr. No. 13-175-JJM (defendant sentenced to 24 years imprisonment after producing images and videos of him engaged in sexual contact with a the 7 year old daughter of his girlfriend, including touching her genitalia and the defendant masturbating onto her); *United States v. Rafael Leal*, Cr. No. 16-111-WES (defendant sentenced to 19.5 years imprisonment after having sex with a 14 year old girl he groomed over the internet); and *United States v. Donald Jones*, Cr. No. 11-82-WES

(defendant with prior molestation conviction sentenced to 50 years imprisonment after travelling to Rhode Island to have sex with a minor in a sting case).

### B. Lifetime Supervised Release

If this Court sentences the defendant to a term of years that may allow release to the community, the United States requests a lifetime term of supervised release. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). Supervised release is not a punishment in lieu of incarceration. *United States v. Granderson*, 511, U.S. 39, 50 (1994). If being on supervised release were the punitive equivalent of being in prison, if it served the just deserts function as well, there would be no need to put most criminals in prison we could put them on supervised release instead. *See Irey*, 612 F.3d at 1210. The life term recommendation contained in Section 5D1.2(b) reflects powerful evidence indicating that recidivism rates for sex offenders do not appreciably decline as offenders age. *See* H.R. Rep. No. 107-527, at 2 (2002) (discussing the merits of a life term of supervised release for sexual offenders). Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate and directly inserted such a recommendation into the Guidelines. *Id.* More specifically, passage of 18 U.S.C. § 3583(k) recognized the long-standing concerns of Federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly for the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual

13

disorders that are not likely to disappear within a few years of release from prison. Many of these offenders need long term or lifetime monitoring and oversight. H.R. CONF. REP. NO. 108-66, at 49-50 (2003), *reprinted in* 2003 U.S.C.C.A.N. 683, 684.

## IV.   CONCLUSION

This Court should sentence Defendant Jose Cortes to a term of 70 years', or 840 months, imprisonment. Nothing in the offense conduct or the Defendant's history and characteristics warrants a downward departure or variance. A guidelines sentence is the only reasonable sentence because it is the only sentence that reflects the seriousness of the Defendant's crimes, provides just punishment for those crimes, fully protects children in the community, and promotes respect for the law.

Respectfully submitted,

AARON WEISMAN
UNITED STATES ATTORNEY

*/s/ Denise M. Barton*
DENISE M. BARTON
Assistant U. S. Attorney,
U. S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
401-709-5000
denise.barton@usdoj.gov

CERTIFICATION OF SERVICE

      On this 23rd day of February 2021, I caused the within Government's Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

*/s/ Denise M. Barton*
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email:  Denise.Barton@usdoj.gov